IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



ALBERT HATCHER,

    PLAINTIFF,

v.                              CIVIL ACTION NO. 2:10cv120

LOWE'S HOME CENTERS, INC.,

    DEFENDANT.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's unopposed Motions for Leave to Amend, Doc. 10, and to Remand, Doc. 11. On June 3, 2010, the Court held a hearing on these motions and ruled from the bench. For the reasons explained herein, the Court **GRANTED** Plaintiff leave to amend, but **DENIED** remand to state court.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2010, Albert Hatcher ("Hatcher") filed a complaint in the Circuit Court for the City of Chesapeake alleging negligence on the part of Lowe's Home Centers ("Lowe's") based on a trip-and-fall that occurred on April 16, 2008. In short, the suit involves a claim for injuries sustained when Hatcher fell backwards over a flatbed merchandise cart that was placed behind him without warning. Id. The parties are diverse and the complaint specifically included an *ad damnum* of $3,000,000. Doc. 1, Ex. 1 at ¶ 6. Lowe's answered the complaint on March 10, 2010, Doc. 1, Ex. 2, and filed a timely notice of removal one (1) week later, Doc. 1, which

1

removed the case to this Court on the basis of diversity of citizenship. Hatcher did not object to removal at that time.

On April 23, 2010, however, Hatcher moved to file an amended complaint reducing the amount of damages sought to $74,500 and a consequent remand to state court. Docs. 10 and 11. In support, Hatcher's counsel asserts that certain medical records, which predate Hatcher's fall in April 2008, "cast Plaintiff's relevant medical condition in a completely different light as it appears that the Plaintiff has significant pre-existing degenerative joint disease of the hip." Doc. 10 at 1. Hatcher now claims that over $80,000 of the $99,740 in total medical expenses are attributable to this pre-existing condition, and the newly calculated medical expenses of roughly $19,000 are "sufficient to justify [his] decision to reduce the amount in controversy below the jurisdictional amount." Doc. 11 at 5. Lowe's did not file a response to Hatcher's motions, but both parties later filed a Consent Order permitting Hatcher to reduce the amount in controversy to no more than $74,500. Lowe's accordingly agreed to remand the case back to the Circuit Court for the City of Chesapeake.

## II. DISCUSSION

As a preliminary matter, the Court must first determine whether Lowe's correctly removed this case from state court. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). If a federal court determines that it lacks subject matter jurisdiction over a case that has been removed from state court, it must remand that case back to state court. See 28 U.S.C. § 1447(c); Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994)

("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.").

Courts look to the record existing at the time the petition for removal was filed when addressing the propriety of removal. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-291 (1938). And, as a general rule, the amount in controversy in an action that is removed because of diversity of citizenship should be measured "at both the time of commencement [of the action in state court] and the time of removal." Sayers v. Sears Co., 732 F. Supp. 654, 656 (W.D. Va. 1990). Here, it is undisputed that the existing record at the time of commencement and the time of removal triggered federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Hatcher is a Virginia resident, and Lowe's is a citizen of North Carolina. Doc. 1 at ¶¶ 5-6. The amount in controversy, as plainly stated in the complaint, Doc. 1, Ex. 1 at ¶ 6, and notice of removal, Doc. 1 at ¶ 4, exceeds $75,000.[1] Importantly, Hatcher never objected, nor does he object now, to removal based on his original complaint. Instead, the parties seek to lower the amount in controversy by amending the complaint after federal jurisdiction was perfected.

Because removal to this Court was valid, the sole issue remaining is whether the parties' post-removal agreement to reduce the amount in controversy to $74,500 ousts this Court of federal diversity jurisdiction. It is clearly established, however, that a post-removal event—such as amending a complaint in order to reduce the amount in controversy below the jurisdictional

---

[1] Citing Schwenk v. Cobra Mfg. Co., 322 F. Supp. 2d 676 (E.D. Va. 2004), Hatcher's argument that the Court should conduct a "totality of the circumstances" analysis to determine whether the amount in controversy is below the jurisdictional limit is inapposite based on the present facts. In Schwenk, the plaintiff's original complaint pled, in bad faith, $74,000 in damages. Id. at 678 ("The Plaintiff's demand for $74,000 in the Motion for Judgment, knowing that he will eventually amend to demand a sum well in excess of $75,000, is an attempt to avoid the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)."). This Court subsequently found the plaintiff's damages to be in excess of $75,000 based on the totality of circumstances and denied his motion to remand. Id. at 678-79. Here, conversely, the original *ad damnum* demanded well above the jurisdictional limit—not below it. It is therefore unnecessary for the Court to apply the Schwenk totality standard when determining the amount in controversy.

limit—does not deprive a federal court of diversity jurisdiction. See St. Paul, 303 U.S. at 292 ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); see also Porsche Cars N. Am., Inc. v. Porschse.net, 302 F.3d 248, 255-56 (4th Cir. 2002) ("[A] court determines the existence of diversity jurisdiction at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy." (citation and internal quotations marks omitted)); Brown v. East. States Corp., 181 F.2d 26, 27 (4th Cir. 1950) (holding "the fact that plaintiff subsequently amended his complaint in an attempt to eliminate the federal question did not make remand proper" after the case was properly removed to federal court); Griffin v. Holmes, 843 F. Supp. 81, 87 (E.D.N.C. 1993) ("[T]he plaintiff . . . may not defeat diversity jurisdiction by filing a post-removal amendment of the complaint which reduces the amount of damages requested by the complaint below the amount in controversy required by 28 U.S.C. § 1332(a)."). The Fourth Circuit does not stand alone, either.[2] Tellingly, neither party offered any case where any court granted a remand of this nature on the basis that the parties agreed to a post-removal reduction of the amount in controversy after jurisdiction had already vested in federal court.[3]

---

[2] See, e.g. Rogers v. Wal-Mart, Inc., 230 F.3d 868, 872-73 (6th Cir. 2000) ("[E]vents occurring after removal that reduce the amount in controversy do not oust jurisdiction."); Grinnell Mut. Reinsurance Co. v. Shierk, 121 F.3d 1114, 1116 (7th Cir. 1997) ("[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction."); Angus v. Shiley, Inc., 989 F.2d 142, 145 (3d Cir. 1993) (affirming a district court's refusal to remand because a "plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor"); De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993) ("Diversity jurisdiction, however, derives from Article III of the Constitution, is defined by Congress, and is not subject to delimitation by . . . post-hoc tactics of litigants."); 16 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 107.41[2][C] at 216 (3d ed. 2005) (stating "if the plaintiff voluntarily lowers the amount in controversy after the defendant removes the case, that change does not deprive the federal court of jurisdiction, if the amount in controversy exceeded the jurisdictional minimum at the time of removal").

[3] The Court notes one unpublished opinion involving a post-removal joint-stipulation filed by the plaintiff and the defendant agreeing to a reduction of damages below $75,000 and a consequent remand. Blake v. ACE Am. Ins. Co., No. 2:07cv620, 2008 WL 687449 (S.D.W. Va. Mar. 11, 2008). There, Chief Judge Goodwin recognized the parties' agreement, but denied remand because jurisdiction properly attached at the time of removal. See id. at *2 ("[I]t is

Some courts have, on the other hand, considered post-removal stipulations reducing the amount in controversy when a plaintiff's jurisdictional basis or claims are "ambiguous" or "indeterminate." See Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) (asserting that post-removal affidavits may be considered in determining the amount in controversy only if the jurisdictional basis was ambiguous at the time of removal); Tommie v. Orkin, Inc., No. 8:09-1225, slip op. at 2, 2009 WL 2148101 (D.S.C. July 15, 2009) (remanding case when the plaintiff alleged an unspecified amount of damages in the complaint and later clarified the amount of damages sought was below the jurisdictional amount by filing a post-removal stipulation); Gwyn v. Wal-Mart Stores, Inc., 955 F. Supp. 44, 46 (M.D.N.C. 1997) ("A post-removal stipulation or amendment of the complaint to allege damages below the jurisdictional amount will not destroy federal jurisdiction once it has attached. However, when facing indeterminate claims, . . . the court may consider a stipulation filed by the plaintiff that the claim does not exceed" the jurisdictional amount. (internal citation omitted)).

That theory is inapplicable in this case, though, because Hatcher's claim and jurisdictional basis were neither ambiguous nor indeterminate at the time of removal. Rather, Hatcher claimed classic trip-and-fall negligence and alleged a specific dollar amount that exceeded $75,000. As the district court in Gwyn recognized, "if a court can find the amount in controversy from the face of the complaint, the normal rule still applies: a later stipulation by the plaintiff is irrelevant." Gwyn, 955 F. Supp. at 46. Here, Hatcher's complaint unambiguously demanded $3,000,000. Similarly, Lowe's specified in its notice of removal that the claim exceeds $75,000, which further cemented jurisdiction at the time of removal. Had jurisdiction been ambiguous or indeterminate upon removal, the Court likely would have accepted the

---

readily apparent that 1) neither of the parties has any desire to remain in federal court, and 2) this case will not involve more than $75,000. I am not anxious to spend time and resources adjudicating such a case. Nevertheless, I cannot remand a case simply because the parties have come to an understanding after removal.").

5

parties' Consent Order to remand. Indeed, there is an obvious distinction between a court's decision to divest itself of jurisdiction and its finding that it lacks jurisdiction. But because jurisdiction clearly attached upon removal, the Court is under a duty to exercise the jurisdiction conferred on it by Congress unless there is some other reason for the Court to abstain. No such reason appears to exist, nor have the parties offered one.

In sum, Hatcher's Motion to Amend and the parties' Consent Order constitute a post-removal event that does not divest this Court's jurisdiction. Once a district court's jurisdiction attaches at the time of removal—as it did here—post-removal amendments, "which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction." St. Paul, 303 U.S. at 293 (footnote omitted). This rule is grounded not only in well over a half-century of precedent, but also in sound policy. If parties were able to defeat jurisdiction by way of post-removal reductions of the amount in controversy, they could unfairly manipulate judicial proceedings. See Purple Passion, Inc. v. RCN Telecom Servs., Inc., 406 F. Supp. 2d 245, 247 (S.D.N.Y. 2005) (noting that a post-removal amendment stripping jurisdiction facilitates "gamesmanship, and the resulting ping-ponging of cases from state to federal court and back again, should not be permitted"). While there is no direct evidence of bad faith here, granting Hatcher's motion could nevertheless encourage future litigants to wrongly influence proceedings and needlessly open the door to forum or judge shopping. This, the Court will not permit.

### III. CONCLUSION

The Federal Rules require that leave to amend shall be freely given when justice so requires. And Hatcher, based on representations made in his briefs and oral argument, believes in good faith that the amount in controversy can no longer exceed $74,500. Accordingly,

Hatcher's request for leave to amend the complaint to reduce the damages is **GRANTED**, but the application to remand to state court is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

                                                     /s/
                                     Henry Coke Morgan, Jr.
                                     Senior United States District Judge

                                HENRY COKE MORGAN, JR.
                              SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA

Date: June 16, 2010